NO. 07-11-0287-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

DECEMBER 6, 2011

In the Interest of D.S.C. V and M.B.G., Children

FROM THE 121ST DISTRICT COURT OF TERRY COUNTY;

NO. 18,562; HONORABLE KELLY G. MOORE, PRESIDING

*Memorandum Opinion*

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant challenges the termination of his parental rights to his son, D.S.C. V, contending there is legally and factually insufficient evidence to support the trial court's two statutory grounds for termination and that termination is in the best interest of the child. We affirm the order of termination.

*Standard of Review*

We review the sufficiency of the evidence in a termination case under the standard discussed in *In re J.F.C.,* 96 S.W.3d 256, 266-67 (Tex. 2002) and *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002) to which we refer the parties. Moreover, we need only find the evidence sufficient to support termination under one statutory ground and that

termination is in the best interest of the child to affirm the trial court's order.  *In re K.C.B.,* 280 S.W.3d 888, 894-95 (Tex. App.–Amarillo 2009, pet. denied).

*Statutory Grounds*

The trial court found that appellant "David" 1) constructively abandoned the child who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (the Department) for not less than six months and the Department had made reasonable efforts to return the child to the father, the father had not regularly visited or maintained significant contact with the child, and the father demonstrated an inability to provide the child with a safe environment; and 2) failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the child who had been in the managing conservatorship of the Department for not less than nine months as a result of the removal of the child from the party for abuse or neglect.

There was evidence that 1) the Department initially opened a case involving the child in 2008 due to domestic violence and drug use involving the child's mother and her boyfriend, 2) at that time, the child was voluntarily placed outside the home and David was not an active presence in the child's life, 3) David had a criminal history in that he had been convicted of driving while intoxicated, criminal trespass, possession of marijuana, burglary of a habitation, possession of cocaine, and possession of marijuana, 4) David's relationship with the child's mother involved domestic violence and drug use including the use of crack, marijuana, and/or methamphetamine around the child,[1] 5) David was located by the Department in August 2008 and notified of the

---

[1]The child was almost six years old at the time of trial.

pending case but he was unable to be reached by caseworkers in November 2008, 6) in January 2009, David was living in Colorado, informed the Department that he wanted an attorney before he would talk to them, and cancelled a meeting he had set up with the Department for January of 2009, 7) later that same month, David declined to participate in services with the Department, 8) David was not in touch with the Department between January 2009 and September 2009, 9) suit seeking termination was filed in September 2009 and the Department sought law enforcement help in locating David, 10) the Department was finally able to re-establish contact with David through his family but he yelled and screamed at the caseworker about the Department's plans to terminate his rights, 11) in December 2009, an order establishing a service plan for David was entered, 12) while David complied with some of the plan, he did not complete an anger management class, maintain stable housing and employment, maintain contact with the Department, do a drug assessment evaluation, complete drug treatment, and participate in family or individual counseling, 13) David did not attend all of his scheduled visitations with the child and stopped all visitations in May 2010, 14) the child would cry and throw tantrums when David missed visitation, 15) in July 2010, the Department learned that David was in the Terry County Jail, 16) in December 2010, David moved to Hobbs, New Mexico, but did not inform the Department, 17) David had not seen his child since May 2010, 18) David had only made two court-ordered payments in support of his son and provided some presents on one occasion, 19) David admitted that he was not currently able to care for the child, and 20) at trial in May 2011, David had criminal charges pending against him, which charges included allegations of assault, injury to a child, assault on a family member, resisting

3

arrest, and disorderly conduct. This foregoing evidence constitutes clear and convincing evidence entitling the factfinder to conclude that David failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the child and the child had been in the managing conservatorship of the Department for nine months as a result of the child's removal for abuse or neglect.

Appellant contends that he visited the child a number of times after he was in the care of the Department. And, there was evidence that 1) his visitations with the child were appropriate, 2) he initiated anger management classes, 3) he lost transportation and could not travel to the locations of some of the services he was ordered to attend, 4) he was hospitalized for a period of time, and 5) he had to leave the area to find work. He also believed he could provide a safe and stable environment for the child with his mother or wife.[2] Despite this evidence, we hold that substantial compliance with the provisions of a court order is not sufficient to prevent termination here. The excuses offered by him are just that and do not prevent a finding that he did not comply with the plan. *See In re C.M.C.,* 273 S.W.3d 862, 874-75 (Tex. App.–Houston 14th Dist. 2008, no pet.) (holding that even if the mother did not take a parenting class as ordered because one was not available, and she substantially complied with the order by getting psychiatric treatment, taking medication, and not engaging in criminal activity, she still did not complete the parenting class, complete an alcohol and drug test, provide

---

[2]Neither David's mother nor new wife testified. So, neither attested to the accuracy of his representations. Moreover, it seems a bit ironic for a father to assert, in response to an accusation of abandonment, that he should be allowed to keep the child since he can find other people to provide the requisite care. They did not sire the child, however. He did, and the obligation lay with him to do what is demanded of fathers.

financial assistance to the children, or maintain a safe home as she lived with her mother who had a criminal history). Having so found, we need not consider the sufficiency of the evidence to support the other statutory ground.

*Best Interest of the Child*

We next consider the best interest of the child and, in doing so, look to what are known as the *Holley* factors. They include, among other things, 1) the desires of the child, 2) the emotional and physical needs of the child now and in the future, 3) the emotional and physical danger to the child now and in the future, 4) the parental abilities of the individuals seeking custody, 5) the programs available to assist those individuals to promote the best interest of the child, 6) the plans for the child by those individuals or by the agency seeking custody, 7) the stability of the home, 8) the acts or omissions of the parent indicating that the existing parent/child relationship is not a proper one, and 9) any excuse for the acts or omissions of the parent. *In re P.E.W.,* 105 S.W.3d 771, 779-80 (Tex. App.–Amarillo 2003, no pet.). It is not necessary that each factor favor termination, *id.* at 790, and the list is not exclusive. *In re C.J.F.,* 134 S.W.3d 343, 354 (Tex. App.–Amarillo 2003, pet. denied). Moreover, the same evidence illustrating the presence of statutory grounds for termination may also be probative of the child's best interest. *In re C.H.,* 89 S.W.3d at 28.

In addition to the evidence already listed, there was evidence that 1) the child was living with his maternal grandmother, 2) the grandmother provides a good home and has been consistent in her care, 3) David's aunt also lives with the grandmother and helps with his care, 4) if the grandmother adopts the child, she will be eligible for an adoption subsidy and assistance to send the child to college, and 5) the child will have

5

contact with his half-brother in his current placement. Considering all of this, there appeared clear and convincing evidence upon which the factfinder could conclude that termination was in the child's best interest.

Accordingly, the order is affirmed.


Per Curiam