NO. 07-12-0283-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 27, 2012

_____

In the Interest of T.S., B.M., and T.M., Children

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 80,073-E; HONORABLE DOUGLAS WOODBURN, PRESIDING

_____

*Memorandum Opinion*

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

S.M., appellant, challenges the termination of her parental rights to her children, T.S., B.M. and T.M. by contending that the evidence was both legally and factually insufficient to support the existence of any statutory ground warranting termination. She also questions the legal and factual sufficiency of the evidence illustrating that termination would be in the best interests of the children.[1] We overrule the issues.

*Statutory Grounds for Termination*

The trial court found that termination was warranted under §§ 161.001(1)(D), (E), (I), (O), and (P) of the Texas Family Code and served the best interests of the children. If one of those statutory grounds has adequate evidentiary support, we need not

_____

[1]The standards of review are discussed in *In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002) and *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002), and we apply them herein.

consider whether the others do as well. *See In re K.C.B.,* 280 S.W.3d 888, 894-95 (Tex. App.–Amarillo 2009, pet. denied) (stating that only one statutory ground need support termination). And, the ground we focus upon here permits termination if the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the child's physical or emotional well-being. TEX. FAM. CODE ANN. § 161.001(1)(E).

The record before us contains the following evidence. S.M. gave birth to T.S. when she was approximately fifteen years old. She, subsequently, gave birth to the twins, B.M. and T.M. The latter two tested positive for cocaine when born in December of 2009. Both their mother and father tested similarly a month later. This resulted in the family being referred to the Department of Family and Protective Services (Department). While under the supervision of the Department, S.M. repeatedly refused to submit to drug testing, absconded to Arizona with the children when the Department attempted to remove them, eventually returned to Texas with the children, gave the Department a false address when she returned, thereafter resided with the children in an abode lacking beds, a refrigerator, a stove, gas, hot water and food, admitted to being unable to find stable employment and housing for the children, and refused to answer the door when the Department and police made effort to contact her. Once the children were removed from her possession, S.M. also failed to comply with various terms of her service plan, which terms included her submission to drug testing and treatment and the acquisition of stable housing and employment. Nor did she maintain contact with her offspring or appear at trial once the Department initiated suit to terminate the relationship.

2

The conduct of the parent before and after a child's birth is relevant in assessing whether a particular child has been endangered, as is conduct directed at other children. *In re S.M.L.D.*, 150 S.W.3d 754, 757 (Tex. App.–Amarillo 2004, no pet.). Furthermore, indicia of endangerment includes an inability to maintain adequate or stable housing, *Doyle v. Texas Dept. of Protective and Regulatory Services,* 16 S.W.3d 390, 398 (Tex. App.–El Paso 2000, pet. denied), an inability to maintain adequate or stable employment, *id.*, the use of drugs while pregnant, *In re S.M.L.D.,* 150 S.W.3d at 757, the continued use of drugs after the child's birth,[2] *In re J.O.A.,* 283 S.W.3d 336, 345 (Tex. 2009), and the inability to provide the child with food or clothing. *See In re W.J.H.*, 111 S.W.3d 707, 716 (Tex. App.–Fort Worth 2003, pet. denied). Evidence of each of those indicia appear of record here. To that, we add S.M.'s failure (without explanation) to maintain contact with the children once they were removed and her failure to appear at trial though having been informed of it and its date. The latter suggests a mindset on the part of S.M. in that she focused on matters other than her children, her relationship with them, and their welfare. And, when all this is considered together, it constitutes both legally and factually sufficient evidence supporting the trial court's finding that S.M. engaged in conduct which endangers their physical or emotional well-being.

*Best Interests of the Child*

In addition to the evidence mentioned above, other evidence illustrated that 1) B.M. and T.M. were in foster care and T.S. was placed with someone she knew and was comfortable with, 2) the Department was preparing a home study for an aunt who

---

[2]Authority holds that the refusal to submit to drug testing can be legitimately interpreted as evidence of the individual's use of drugs. *In re J.T.G.,* 121 S.W.3d 117, 131 (Tex. App.–Fort Worth 2003, no pet.).

lives in Arizona for placement for all three children, 3) the aunt planned to adopt all three children, 4) the children were doing well and their needs were being met once removed from S.M., and 5) the Department desired to have all three children placed in the same home. Together, this constitutes legally and factually sufficient evidence supporting the conclusion that termination was in the best interests of the children. *See In re P.E.W.*, 105 S.W.3d 771, 779-80 (Tex. App.–Amarillo 2003, no pet.) (discussing the factors used in assessing whether the best interests of the child warrant termination).

Because more than sufficient evidence illustrated that both a statutory ground and the best interests of the children warranted termination of the parent-child relationship, the judgment of the trial court is affirmed.

Brian Quinn
Chief Justice