

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-18-00206-CV
_____

IN THE INTEREST OF P.L.G. AND H.M.G., CHILDREN

On Appeal from the 100th District Court
Childress County, Texas
Trial Court No. 10,713, Honorable Stuart Messer, Presiding

August 28, 2018

## MEMORANDUM OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

"Tricia" appeals the trial court's order terminating her parental rights to her children, "Paul" and "Hailey."[1] Tricia asserts the evidence is neither legally nor factually sufficient to support the trial court's finding that termination of her parental rights is in the best interest of the children. We will affirm the trial court's order.

---

[1] To protect the children's privacy, we will refer to the appellant mother as "Tricia," the father of the children as "David," the children as "Paul" and "Hailey," and the intervenor as "Laura." *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2017); TEX. R. APP. P. 9.8(b). David's parental rights were also terminated. His counsel has filed an *Anders* brief in a separate appeal in cause number 07-18-00297-CV.

Background

In May of 2017, the Texas Department of Family and Protective Services filed its petition for protection, conservatorship, and termination of the parental rights of Tricia and David as to their children, nine-year-old Paul and eight-year-old Hailey. The children were removed after the Department received a report that Tricia and David were using methamphetamine and marijuana while caring for the children. Tricia and David submitted to a drug test requested by the Department and both tested positive for methamphetamine. There were also concerns about the stability of the home because neither Tricia nor David was employed and they were in the process of being evicted from their home. Both parents admitted that they were unable to provide for Paul and Hailey at the time of the removal.

The Department developed a service plan for Tricia. According to the plan, Tricia was required to: abstain from the use of illegal drugs; submit to random drug screens; complete a substance abuse assessment and follow recommendations; maintain safe, stable housing; maintain stable, verified employment; take parenting classes; complete a psychological evaluation; participate in Rational Behavior Training (RBT); attend individual and couple's counseling; pay child support; and attend visits with Paul and Hailey.

Tricia completed a psychological evaluation, RBT, parenting classes, a drug assessment, and outpatient drug treatment. Tricia did not attend individual or couple's counseling and she failed to pay her court-ordered child support. Tricia's visitation with Paul and Hailey was suspended in February of 2018 after she refused to submit to

multiple drug tests. Tricia questioned why the caseworker would send her for a drug test "that was going to come back dirty." Tricia spoke with the caseworker on the morning of trial, but she did not attend the trial.

Paul and Hailey are placed with Laura, an intervenor in the case. Laura has known Tricia since Tricia was three years old. Tricia also has another child who lives with Laura. Laura testified that Tricia has had a substance abuse problem since she was thirteen years old. According to Laura, Tricia has been addicted to hydrocodone twice and she has been treated at the methadone clinic. She testified, "As soon as [Tricia] quit the methadone clinic and got off hydrocodone, she went right back to the crystal meth. She has never stopped smoking marijuana." In July 2017, Tricia was arrested for possession of a dangerous drug and possession of marijuana. Tricia told Laura that "it would be a cold day in hell before she went to rehab or did another drug test for CPS."

Before the Department filed its termination suit, Paul and Hailey frequently stayed overnight at Laura's and sometimes they stayed for the weekend. The children are bonded with Laura and they have asked to remain in her home. Paul has been diagnosed with autism, oppositional defiant disorder, and attention deficit hyperactivity disorder. He has had some behavioral issues at school. Laura has worked with the school to address their concerns about Paul. She also takes Paul to counseling once a week. Paul's grades and behavior have significantly improved since he has lived with Laura. Laura plans to adopt Paul and Hailey and also their half-sibling.

The trial court terminated Tricia's parental rights to Paul and Hailey on the grounds of endangering conditions, endangering conduct, failure to support, failure to comply with

3

a court order that established actions necessary to retain custody of the children, and continuing substance abuse after completion of a substance abuse treatment program. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (F), (O), (P) (West Supp. 2017).[2] The court also found that clear and convincing evidence demonstrated that termination was in the best interest of Paul and Hailey. *See* § 161.001(b)(2).

Applicable Law

A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)). Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *See id.*

In a case to terminate parental rights by the Department under section 161.001 of the Family Code, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. § 161.001(b). Clear

---

[2] Further references to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014); *In re J.F.C.,* 96 S.W.3d 256, 264 (Tex. 2002). Both elements must be established, and termination may not be based solely on the best interest of the children as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d at 362. We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the children's best interest. *In re K.C.B.*, 280 S.W.3d at 894-95.

## Standards of Review

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.,* 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Even evidence that does more than raise surmise or suspicion is not sufficient unless that evidence is

5

capable of producing a firm belief or conviction that the allegation is true. *In re K.M.L.,* 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient, and we must reverse. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We must also consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

Analysis - Best Interest of the Children

In her sole issue, Tricia challenges the factual and legal sufficiency of the evidence supporting the best interest finding made under section 161.001(b)(2). She does not contest the statutory basis for termination under section 161.001(b)(1).

A determination of best interest necessitates a focus on the child, not the parent. *See In re B.C.S.,* 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.). Appellate courts examine the entire record to decide what is in the best interest of the child. *In re E.C.R.,* 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that it is in the

child's best interest to preserve the parent-child relationship. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006).

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors include: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent. *Id.* "[T]he State need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'" *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)). Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re E.C.R.*, 402 S.W.3d at 249. The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). We must also bear in mind that a child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount

7

consideration in determining best interest. *See In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

Several *Holley* factors support the trial court's determination that termination of Tricia's parental rights is in the children's best interest.

The Desires of the Children

Paul and Hailey were ages nine and eight at the time of trial in May of 2018. The children are bonded with Laura and desire to stay with her. Laura testified that Tricia told her that she does not want the children, that she wished she never had them, and that she hates them. Tricia has not visited the children or attempted to participate in any court-ordered services since February. This factor weighs in favor of termination.

The Emotional and Physical Needs of and Danger to the Children

The next two factors are the children's emotional and physical needs now and in the future, and the emotional and physical danger to the children now and in the future. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *Edwards v. Tex. Dep't of Protective & Regulatory Servs.,* 946 S.W.2d 130, 138 (Tex. App.—El Paso 1997, no writ), *disapproved on other grounds by, In re J.F.C.,* 96 S.W.3d at 267. A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re D.L.N.,* 958 S.W.2d 934, 941 (Tex. App.—Waco 1997, pet. denied), *disapproved on other grounds by, In re J.F.C.,* 96 S.W.3d at 267. A trial court is entitled to consider a parent's history of drug use and irresponsible choices. *In re J.O.A.,* 283 S.W.3d 336, 346 (Tex. 2009). Unchallenged predicate findings are binding on an appellate court. *In re E.A.F.,*

424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Proof concerning the statutory predicate findings under section 161.001(b)(1) does not relieve the Department of its burden of proving that termination is in the children's best interest, but "the same evidence may be probative of both issues." *In re C.H.,* 89 S.W.3d at 28. Evidence of past misconduct or neglect is permissible as an inference that a parent's future conduct may be measured by their past conduct. *In re D.S.,* 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.) (parent's future conduct may be measured by his or her past conduct in determining whether it is in child's best interest to terminate parental rights). A factfinder may reasonably infer from a parent's refusal to take a drug test that the parent was using drugs. *In re C.R.,* 263 S.W.3d 368, 374 (Tex. App.—Dallas 2008, no pet.).

Tricia's substance abuse began when she was thirteen years old. The Department became involved in May of 2017, after Tricia and David tested positive for methamphetamine. Tricia and David admitted at the time the children were removed that they were unable to provide for the children. A couple of months later, Tricia was arrested for possession of a dangerous drug and possession of marijuana. Tricia's substance abuse was also a cause of her previous involvement with the Department in 2015. Although Tricia completed outpatient drug treatment in December of 2017, she refused to submit to court-ordered drug testing after she completed that treatment. Tricia continued to live with David even though he refused to participate in a drug treatment program.

A parent's history and admissions are relevant to the best interest determination. *In re D.M.,* 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). "A parent's

9

continued drug use demonstrates an inability to provide for the child's emotional and physical needs and to provide a stable environment for the child." *In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied) (citing *In re F.A.R.*, No. 11-04-00014-CV, 2005 Tex. App. LEXIS 234, at *4 (Tex. App.—Eastland Jan. 13, 2005, no pet.) (mem. op.). The trial court could have concluded that Tricia is unable to meet the physical or emotional needs of the children and is unable to protect the children from physical or emotional danger. A factfinder may infer that a parent's failure to complete her court-ordered services, and in particular drug-treatment services, indicates a continuing danger to the children. *See In re B.A.,* No. 04-13-00246-CV, 2013 Tex. App. LEXIS 10841, at *5 (Tex. App.—San Antonio Aug. 28, 2013, no pet.) (mem. op.) (parent's failure to complete services directly related to reasons for child's removal indicates continued danger to child). Further, a factfinder may infer from evidence of ongoing drug abuse that a parent is unable to provide a safe environment for the children, cannot meet the children's present and future physical and emotional needs, and that her continuing care of the children presents a present and future danger to their safety. *See In re S.N.,* 272 S.W.3d 45, 52-53 (Tex. App.—Waco 2008, no pet.) (parent's illegal drug use is relevant to determining present and future risk to child's physical and emotional well-being). Tricia's long history of substance abuse, continual use of drugs after the children were removed, and failure to submit to drug testing suggests that similar conduct will occur in the future. *In re D.L.N.,* 958 S.W.2d at 941. The factfinder may infer that a parent's past conduct of endangering the well-being of the children may recur in the future if the children are returned. *Id.* These two factors weigh heavily in favor of the trial court's best interest determination.

<u>Parenting Ability and Programs Available to Assist Party Seeking Custody</u>

The fourth and fifth factors will be discussed together. In reviewing the parenting ability of the parent, a factfinder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children. *In re G.N.,* 510 S.W.3d 134, 139 (Tex. App.—El Paso 2016, no pet.). A parent's exposure of a child to drug use may be properly considered in determining whether a parent has demonstrated appropriate parenting abilities. *In re H.D.,* No. 01-12-00007-CV, 2013 Tex. App. LEXIS 5699, at *42 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (mem. op). The factfinder can infer from a parent's failure to take the initiative to utilize the available programs offered by the Department that the parent "did not have the ability to motivate herself to seek out available resources needed now or in the future." *In re J.M.,* No. 01-14-00826-CV, 2015 Tex. App. LEXIS 2130, at *21 (Tex. App.—Houston [1st Dist.] Mar. 5, 2015, no pet.) (mem. op.) (*citing In re W.E.C.*, 110 S.W.3d 231, 245 (Tex. App.—Fort Worth 2003, no pet.)).

Although Tricia completed some of the court-ordered services, she failed to complete individual counseling or couple's counseling. She refused to submit to court-ordered drug testing after she completed an outpatient drug treatment program. She continued to live with David, who refused to seek drug treatment and who admitted to his own abuse of narcotics. Laura offered to pay for Tricia and David to attend a long-term private drug rehabilitation program, but they refused. Tricia's failure to complete the court-ordered services could have led the trial court to infer that Tricia did not have the ability to motivate herself to seek out available resources now or in the future. *See id.* Laura's commitment to Paul and Hailey pre-dates this termination suit and she continues to take the steps necessary to ensure that the children's needs are met. Laura takes Paul

11

to counseling and works with school officials to address his behavior issues. The trial court was entitled to find that this evidence weighed in favor of the best interest finding.

Plans for the Children and Stability of the Home or Placement

We will consider the sixth and seventh factors together. The sixth factor examines the plans for the child by those individuals or the agency seeking custody. The seventh factor is the stability of the home or proposed placement. Stability and permanence are paramount in the upbringing of children. *In re J.D.,* 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The factfinder may compare the parents' and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *Id.* at 119-20.

Tricia did not testify at the termination hearing or offer any specifics of her plans for the children. The Department's investigation revealed that there were no utilities in the home where Tricia, David, and the children were living just prior to the removal. Tricia has not been able to maintain a stable home or employment since the Department became involved in 2017. According to Laura, Tricia told her that she wished she never had the children, does not want them, and hates them. The caseworker testified that Tricia and David were currently living in a trailer park in a small camper trailer. There is no room for the children to live in such a trailer. Tricia failed to pay any of her court-ordered child support and did not verify any employment. Conversely, Laura is providing a drug-free environment and the stability, structure, security, and consistency that Paul and Hailey need. Laura is able to meet the special needs of Paul and both Paul and Hailey are bonded with Laura. Laura is interested in adopting Paul and Hailey if parental

12

rights are terminated. This evidence supports the trial court finding that termination was in the best interest of the children.

Acts and Omissions of the Parent

The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. The evidence established that Tricia engaged in conduct which endangered the children's physical and emotional well-being. Tricia's history of substance abuse and continued methamphetamine use, her lack of interest in visiting with the children, and her failure to maintain a stable home is evidence indicating that the existing parent-child relationship is not a proper one.

From a review of these *Holley* factors, we conclude that the evidence is both legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of Tricia's parental rights is in the best interest of Paul and Hailey.

CONCLUSION

The judgment of the trial court terminating Tricia's parental rights is affirmed.


Judy C. Parker
Justice


13