

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-12-0450-CV
_____

In the Interest of A.G., J.G., P.G., S.G. and A.G., Children

On Appeal from the 121st District Court
Terry County, Texas
Trial Court No. 19033, Honorable Kelly G. Moore, Presiding

March 7, 2013

MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Jose Luis Gutierrez, appellant and father of A.G., J.G., P.G., S.G. and A.G. challenges the termination of his parental rights to them. He believes that the evidence supporting termination was both legally and factually insufficient.[1] We overrule the contentions and affirm the judgment.

*Background*

According to the record, 1) the mother of the children voluntarily relinquished her parental rights to them, 2) Gutierrez had been incarcerated for three years prior to the

---

[1]The standards of review are discussed in *In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002) and *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002), and we apply them herein.

hearing, though he was subject to being released at any time, 3) he had been convicted of driving while intoxicated twice, once for failing to stop and render aid, and once for aggravated sexual assault of a child (in the early 1990's), 4) he had been in jail at least four times since the birth of the two oldest children, 5) he last saw the children in July of 2009, and 6) he has not engaged in suggested services by the Texas Department of Family and Protective Services (the department) to reacquire his children nor paid child support.

An aunt and uncle wanted to adopt the two oldest children. They have lived with them for three years. The three youngest have been living in foster care. The aunt testified that she 1) would take all five kids but was unable to do so without financial help and a larger home, 2) believed Gutierrez loved the children, was involved with them but termination was warranted, 3) would plan on remodeling her house to accommodate all the children if the court ordered termination, 4) received an offer of assistance from the Department to secure a bigger home, and 5) would allow Gutierrez to maintain contact with the children if his rights were terminated and she adopted them.

Shelly Thompson, a licensed counselor, testified that 1) she is the counselor for all five children, 2) the children are doing well, 3) all had been fine except for P.G., who was upset that she would not ever see her father again, 4) splitting up the children would be hard on them, especially upon the younger ones, 5) the children witnessed Gutierrez engage in domestic violence against their mother, 6) he was often gone, 7) separate adoptions may not be in the best interests of the children, 8) termination would be in their best interests because the children believed he was never there and always

2

hit their mother, 9) the children are doing well in their present environments, and 10) the children want to be adopted by a family they know.

Naomi Gonzalez, the children's Child Protective Services (CPS) case worker, testified that 1) the two oldest, A.G. and J.G., have learning disabilities but are doing well with the proper services in school, 2) the aunt's house is too small to accommodate the three younger children and her own as well, 3) if the aunt could adopt the children, then she could receive a financial subsidy for each adopted child and the children could receive Medicaid, 4) the children also could have their tuition paid for if they attended a Texas college, and 5) other family members could not take the children. In response to being asked if termination was in the best interests of the children, the caseworker said:

> [b]ecause the children have had a case for almost 18 months. They deserve to be stable. They deserve to be in a permanent home and not to have to wait any longer to be in a stable permanent home. And the father, Mr. Gutierrez, with his history of being in and out of jail, it just shows that he has a pattern of involving himself in criminal activity.

Furthermore, the caseworker testified that the youngest child is four and had not seen Gutierrez since she was an infant.

The trial court found that termination was warranted under §§ 161.001(1)(D), (E), (L), and (N) of the Texas Family Code. It further concluded that termination was in the best interests of the children.

*Statutory Grounds for Termination*

It is clear that if one statutory ground for termination has adequate evidentiary support, we need not consider whether the others do as well. *See In re K.C.B.,* 280 S.W.3d 888, 894-95 (Tex. App.–Amarillo 2009, pet. denied) (stating that only one statutory ground need support termination). And, the ground we focus upon here

3

permits termination if the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the child's physical or emotional well-being. TEX. FAM. CODE ANN. § 161.001(1)(E) (West Supp. 2012).

Under section 161.001(1)(E), endanger has been determined to mean "to expose to loss or injury" or "to jeopardize." *See In re M.C.*, 917 S.W.2d 268, 269 (Tex.1996). It is not necessary that the endangering conduct be directed at the child or that the child actually suffer injury, or even that the conduct constitutes a concrete threat of injury to the child. *In re M.J.M.L.*, 31 S.W.3d 347, 350 (Tex. App.-San Antonio 2000, pet. denied). Nor must the conduct be active in nature; it may also be passive or arise from omissions to act. *Id.* It may also occur either before or after a child's birth and be focused at others. *In re S.M.L.D.*, 150 S.W.3d 754, 757-58 (Tex. App.–Amarillo 2004, no pet.). Additionally, courts have recognized that the endangering conduct includes such things as an inability to maintain adequate or stable housing, *Doyle v. Texas Dept. of Protective and Regulatory Services,* 16 S.W.3d 390, 398 (Tex. App.–El Paso 2000, pet. denied), an inability to maintain adequate or stable employment, *id.*, the mother's use of drugs while pregnant, *In re S.M.L.D.,* 150 S.W.3d at 757, the use of drugs after the child's birth, *In re J.O.A.,* 283 S.W.3d 336, 345 (Tex. 2009), an inability to provide the child with food or clothing, *see In re W.J.H.*, 111 S.W.3d 707, 716 (Tex. App.–Fort Worth 2003, pet. denied), and repeated criminal conduct of the parent resulting in that parent's incarceration and failure to care for the child. *In re V.V.*, 349 S.W.3d 548, 555 (Tex. App.–Houston [1st Dist.] 2010, no pet.).

Here, Gutierrez's continual engagement in criminal misconduct resulting in numerous prison terms, his repeated assaults upon the mother of the children which

4

were witnessed by the children, his sexual assault upon a minor, the lack of a strong parental bond between parent and child, his separation from the children for long periods of time, his decision to leave the children with their mother who eventually abandoned them, his failure to comply with the Department's service plan, and his failure to pay child support constitute both legally and factually sufficient evidence supporting the determination that Gutierrez engaged in conduct endangering the physical or emotional well-being of the children.  It may well be that evidence appears of record suggesting that Gutierrez cares for his children and is planning to provide for them once he leaves prison; however, it does not require a different result.  The factfinder is free to assess his credibility and weigh his historical conduct when making its decision.  *In re J.O.A.*, 283 S.W.3d at 346.  It need not believe Gutierrez.

*Best Interests of the Child*

As for the evidence touching upon the children's best interests, we add to the foregoing mix evidence that 1) the two oldest children have learning disabilities and since living with their aunt they have performed better at school, 2) the younger three have been in foster care since their removal and their attitudes and school performance have improved, 3) the aunt wishes to adopt all five and is willing to take the necessary steps to effectuate that, 4) Gutierrez will still be able to interact with the children if adopted by the aunt, and 5) the younger two children have a *de minimis* relationship or experience with their father.  Together, this constitutes legally and factually sufficient evidence supporting the conclusion that termination was in the best interests of the children.  *See In re P.E.W.*, 105 S.W.3d 771, 779-80 (Tex. App.–Amarillo 2003, no pet.)

(discussing the factors used in assessing whether the best interests of the child warrant termination).

Because more than sufficient evidence illustrates that both a statutory ground and the best interests of the children warranted termination of the parent-child relationship, the judgment of the trial court is affirmed.

Brian Quinn
Chief Justice