

## In The
## Court of Appeals
## Seventh District of Texas at Amarillo

No. 07-19-00309-CV

IN THE INTEREST OF S.S., A CHILD

On Appeal from the 100th District Court
Hall County, Texas
Trial Court No. 7833; Honorable Stuart Messer, Presiding

February 6, 2020

## MEMORANDUM OPINION

### Before PIRTLE, PARKER, and DOSS, JJ.

Appellants, Stephen and Ashley appeal the trial court's order terminating their parental rights to S.S., their four-year old daughter.[1] Via several issues, Stephen argues the evidence was insufficient to support the grounds on which the trial court terminated his parental rights and was insufficient to support the trial court's finding under the Texas Family Code that it was in S.S.'s best interest to terminate his parental rights. Through one issue, Ashley asserts the evidence was insufficient to support the trial court's finding

---

[1] To protect the privacy of the parties involved, we refer to the mother and father by their first name only and to the child by her initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2018); TEX. R. APP. P. 9.8(b).

under the Texas Family Code that it was in S.S.'s best interest to terminate her parental rights. We affirm the order of the trial court.

## BACKGROUND

The Texas Department of Family and Protective Services became involved with the family in November 2017 when it received a report of negligent supervision of S.S. and that Ashley and Stephen were using methamphetamine and engaging in domestic violence. When an investigator went to the home, he learned that Ashley was receiving treatment at a local in-patient mental health facility because she had attempted to cut herself in the neck with a piece of glass. When the investigator later spoke with Ashley, she admitted she and Stephen used methamphetamine and that the two had a history of domestic violence. Ashley submitted to a drug screen and the result was positive for methamphetamine. S.S. was also tested. Her results were negative. Stephen did not appear for his initial drug screening but later submitted to one. That drug screen result was not available at the time of the final hearing held in the summer of 2019.

Neither Ashley nor Stephen appeared for the final hearing. Both of their attorneys were present and told the court each party had received notice of the hearing. The attorneys also told the court of their efforts to communicate with the parents. The attorneys told the court that Ashley was living in Florida and that Stephen had been living in Oklahoma but had recently returned to Texas. At the time of the final hearing, S.S. was living with a maternal aunt in New York and was doing very well and had bonded to the family. According to the Department witnesses, both parents were happy with that placement and wanted the child to remain there. The aunt expressed a desire to adopt S.S.

2

The Department called as witnesses three employees of the Department: two investigators and a case worker. Department personnel testified the mother continued to use methamphetamine throughout the pendency of the case. The mother had a history of mental health issues and time spent at the local mental health treatment facility. The parents did not visit S.S., did not stay in contact with S.S., did not inquire as to S.S.'s well-being, and did not make required child support or medical payments for S.S. Department personnel also testified that both parents signed a service plan that included the tasks necessary to secure return of S.S. to their care. Neither parent completed those tasks. The father completed an anger management class and submitted to drug screening. He also completed a psychiatric evaluation but did not participate in any of the recommendations following that evaluation.

All of the witnesses and the attorney ad litem for S.S. recommended termination of Ashley's and Stephen's parental rights because it was in S.S.'s best interest. At the conclusion of the hearing, the court found sufficient evidence to terminate the parents' parental rights under several predicate grounds contained in the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(B), (D), (E), (F), (N), (O), (P) (West 2019). It also found clear and convincing evidence to support a finding that termination of the parents' rights was in S.S.'s best interest. *Id.* at § 161.001(b)(2).

### STANDARD OF REVIEW

The natural right existing between parents and their children is of constitutional dimension. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Accordingly, termination proceedings are strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563

3

(Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child are not sacrificed merely to preserve those rights. *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 require application of the heightened standard of "clear and convincing evidence" in cases involving involuntary termination of parental rights. *See In re E.N.C.,* 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002).

In a legal sufficiency challenge, we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so. *In re K.M.L.,* 443 S.W.3d 101, 112-13 (Tex. 2014). However, the reviewing court should not disregard undisputed facts that do not support the verdict to determine whether there is clear and convincing evidence. *Id.* at 113. In cases requiring clear and convincing evidence, evidence that does nothing more than raise surmise and suspicion will not suffice unless that evidence can produce in the mind of the fact finder a firm belief or conviction that the allegation is true. *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266 (citing *In re C.H.,* 89 S.W.3d at 25). We must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We also consider whether

4

disputed evidence is such that a reasonable fact finder could not have resolved the disputed evidence in favor of its finding. *Id.* If, considering the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

The Texas Family Code permits a court to terminate the relationship between a parent and a child if the Department establishes one or more acts or omissions enumerated under section 161.001(b)(1) and that termination of that relationship is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1), (2); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). The burden of proof is by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.206(a). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* at § 101.007.

Only one statutory ground is required to support termination. *In re K.C.B.*, 280 S.W.3d 888, 894-95 (Tex. App.—Amarillo 2009, pet. denied). Although evidence presented may be relevant to both the statutory grounds for termination and best interest, each element must be established separately and proof of one element does not relieve the burden of proving the other. *See In re C.H.*, 89 S.W.3d at 28.

### ANALYSIS—SUFFICIENCY OF EVIDENCE

Through several issues, Stephen argues the evidence presented at the final hearing was not sufficient to support the trial court's termination of his parental rights under the predicate grounds. Ashley does not challenge the sufficiency of the evidence supporting the predicate grounds under which her rights were terminated.

Here, the Department alleged, and provided evidence of, several predicate grounds under which the trial court could have terminated Stephen's parental rights. While only one statutory ground is required to terminate parental rights, we must address Stephen's complaints that the evidence is legally and factually insufficient to support the trial court's findings under subsections (D) and (E). *See In re N.G.*, 577 S.W.3d 230, 232-33 (Tex. 2019) (per curiam) (finding due process and due course of law require an appellate court to address grounds (D) and (E) when raised by the parent on appeal and must also detail its analysis under those grounds).

Here, the trial court found, among other grounds, that the Department established by clear and convincing evidence that Ashley and Stephen had knowingly placed or allowed S.S. to remain in conditions or surroundings which endangered the child's physical or emotional well-being. TEX. FAM. CODE ANN. § 161.001(b)(1)(D). The trial court also found by clear and convincing evidence that they engaged in conduct or knowingly placed S.S. with persons who engaged in conduct which endangered S.S.'s physical or emotional well-being. *Id.* at § 161.001(b)(1)(E).

Subsection 161.001(b)(1)(D) permits termination when clear and convincing evidence shows that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." *Id.* at § 161.001(b)(1)(D). Subsection (D) requires a showing that the environment in which the child was placed posed a danger to the child's physical or emotional health, and it permits termination based on a single act or omission by the parent. *In re K.C.F.*, No. 01-13-01078-CV, 2014 Tex. App. LEXIS 6131, at *32-34 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.) (citation omitted). Subsection

6

(D) concerns the child's living environment, rather than the parent's conduct, though parental conduct may produce an endangering environment. *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). It is not necessary that a parent's conduct be directed at the child or that the child be injured, but the parent must at least be aware of the potential for danger to the child in such an environment and the fact finder must find that the parent disregarded that risk. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Illegal drug use and criminal activity support a conclusion that the child's surroundings endanger her physical or emotional well-being. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). The relevant time frame under this subsection is prior to the child's removal (i.e., while the child is living in that environment). *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied).

Subsection (E) permits termination when clear and convincing evidence shows that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the child's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). The relevant inquiry here is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. *In re J.T.G.*, 121 S.W.3d at 125. Termination under subsection (E) must be based on more than a single act or omission. *Id.* That is, a voluntary, deliberate, and conscious course of conduct by a parent is required. *Id.* Thus, while both subsections (D) and (E) focus on endangerment, they differ regarding the source and proof of endangerment. *In re S.M.L.,* 171 S.W.3d at 477. To support a finding of endangerment under subsection (E), the parent's conduct does not necessarily have to be directed at the child nor is the child

7

required to actually suffer injury. *Texas Dep't of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (reversing appellate court's holding that father's imprisonment did not endanger the emotional and physical well-being of a child).

Here, neither Stephen nor Ashley testified at the final hearing. Instead, Department employees testified Ashley told them she and Stephen used methamphetamine together. According to their testimony, Ashley said she had been smoking methamphetamine for two months and Stephen had been "shooting it with needles" for over a year. Ashley's drug test confirmed her use with a positive result for methamphetamine. S.S.'s test result was negative. Stephen initially failed to submit to a drug test and the result of his later test was not available at the time of the final hearing.

Ashley also told Department employees of domestic violence incidents between herself and Stephen. A Department employee testified Ashley admitted to "ongoing domestic violence in the home, past and present." Ashley said the reason she was being treated at a mental health facility was because she tried to cut herself in the neck with glass from a picture frame after an argument with Stephen. Stephen did not discuss any of these allegations with the Department and he did not testify at the final hearing.

The record does, however, indicate S.S. was in Stephen's care while Ashley was receiving mental heath care and the child appeared "physically plump, healthy" when the Department investigator conducted an unannounced visit to the home. This, Stephen argues, shows he did not place S.S. in endangering conditions or engage in endangering conduct. Given the evidence before the court that Stephen used methamphetamine, a circumstance we find endangered the well-being of the child, we cannot agree with his contention. Further, Stephen and S.S. were with Stephen's father while Ashley was being

treated and Stephen's father used marijuana and was, according to Stephen, an alcoholic. Given the other evidence before the court, we find the trial court could have found sufficient evidence to support a finding regarding the predicate grounds set forth under (D) and (E) despite the observation that S.S. appeared healthy.

Furthermore, domestic violence and drug use are circumstances the trial court can consider as endangering under subsections (D) and (E). *In re K.A.F.*, No. 05-12-01582-CV, 2013 Tex. App. LEXIS 7350, at *33-34 (Tex. App.—Dallas June 14, 2013, no pet.) (mem. op.). *See also In re M.V.*, 343 S.W.3d 543, 547 (Tex. App.—Dallas 2011, no pet.) (permitting children to remain in abusive environment created by domestic violence supports termination of parental rights under subsections (D) and (E)). Many courts have noted that a parent's ongoing drug use is conduct that subjects a child to a life of uncertainty and instability, which endangers the physical and emotional well-being of the child. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). *See also In re K.A.S.,* No. 07-12-00234-CV, 2012 Tex. App. LEXIS 8725, at *16-17 (Tex. App.—Amarillo Oct. 18, 2012, no pet.) (mem. op.); *In re A.B.,* 125 S.W.3d 769, 777 (Tex. App.—Texarkana 2003, pet. denied) ("Drug use and its effect on a parent's life and ability to parent may establish an endangering course of conduct."). "A parent's continued drug use demonstrates an inability to provide for the child's emotional and physical needs and to provide a stable environment for the child." *In re E.M.,* 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied) (citing *In re F.A.R.,* No. 11-04-00014-CV, 2005 Tex. App. LEXIS 234, at *4 (Tex. App.—Eastland Jan. 13, 2005, no pet.) (mem. op.)). Thus, the trial court, as fact finder, could have been persuaded that Stephen's drug use and history of domestic violence was sufficient to establish the predicate grounds set forth in section 161.001(b)(1)(D) and (E) of the Family Code.

We also note that neither parent completed the services required to secure the return of S.S. to their care. The record shows that while Stephen and Ashley completed some of the services required of them, they each failed to complete all of them. Failure to complete the requirements of a service plan may be considered as part of the endangering conduct analysis under subsection (E). *In re X.S.*, No. 07-17-00422-CV, 2018 Tex. App. LEXIS 2735, at *9-10 (Tex. App.—Amarillo April 18, 2018, no pet.) (mem. op.); *Robinson v. Tex. Dep't of Protective & Regulatory Servs.*, 89 S.W.3d 679, 686-87 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

Based on this record, we find the evidence was sufficient to permit the trial court to find by clear and convincing evidence that Stephen knowingly placed or allowed S.S. to remain in endangering conditions or surroundings and engaged in endangering conduct.[2] TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). Accordingly, we overrule Stephen's second, third, fourth, fifth, sixth, seventh, and eighth issues.

### ANALYSIS—BEST INTEREST

Both parents challenge the sufficiency of the evidence supporting the trial court's finding that termination of their parental rights under the Family Code was in S.S.'s best interest. In that regard, to support termination of their parental rights, the Department was required to prove by clear and convincing evidence that termination of Ashley's and Stephen's parental rights was in S.S.'s best interest. *Id.* at § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d at 116. Only if no reasonable fact finder could have formed a firm belief or conviction that termination of the parents' parental rights was in the child's best interest

---

[2] Having found sufficient evidence to support the trial court's termination of parental rights under subsections (D) and (E), we need not address Stephen's remaining contentions regarding the grounds under which the trial court terminated his rights. *In re K.C.B.*, 280 S.W.3d at 894-95.

can we conclude the evidence is insufficient. *In re K.M.L.*, 443 S.W.3d at 116 (citing *In re J.F.C.,* 96 S.W.3d at 266). The fact finder must make a best interest determination with respect to each parent independently.

In making a best interest determination, there is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. *See* TEX. FAM. CODE ANN. § 263.307(a). Section 263.307(b) provides a non-exhaustive list of factors a fact finder may consider in deciding the best interest of a child. Similarly, the Supreme Court has set out other factors a fact finder might consider when determining the best interest of a child. *See Holley*, 544 S.W.2d at 371-72. Those factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* Importantly, the absence of evidence about one or more of these considerations does not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27; *In re A.C.,* 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re C.H.,* 89 S.W.3d at 28. *See also In re E.C.R.*, 402 S.W.3d 239, 249-50 (Tex. 2013). The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *See In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). Additionally, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

As set forth in our discussion of the evidence supporting the predicate grounds on which the trial court terminated the parents' rights, evidence showed both parents used methamphetamine. Also discussed above, Ashley told Department personnel that she and Stephen had engaged in incidents of ongoing domestic violence.

The record further shows Ashley had a history of mental health issues, sometimes requiring treatment at a mental health facility. She had, on at least one occasion, threatened to harm herself. And, the record includes many instances of unusual behavior for which authorities were contacted. Further, the record shows other incidents of the unstable nature of Ashley's life. At the time of the final hearing, Ashley was living on a "come-and-go" basis with her mother in Florida. The caseworker testified Ashley's mother's home was not an appropriate placement for S.S. due to the mother's criminal history and her involvement with CPS in Florida. The caseworker also told the court Ashley was not employed and had not been employed since prior to S.S.'s removal.

Stephen also lived an unstable life. While he had lived in Oklahoma for the majority of the time in which this case was pending, at the time of the final hearing, he was living with his father in Dalhart, Texas. While in Oklahoma, Stephen lived with an aunt, then another relative, and then was homeless.

At the time of the final hearing, S.S. was four years old. When a child is too young to express her desires, the fact finder may consider whether the child has bonded with the foster family. Additionally, the fact finder may consider whether the child is well cared for by her current caregivers, and whether she has spent significant or minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Here, S.S. had been living with her maternal aunt and her husband in New York for thirteen months, was bonded to the family, and doing well. The aunt expressed a desire to adopt S.S. and was anxious to begin that process. Both Stephen and Ashley told the caseworker they were happy with S.S.'s placement and desired for her to remain there. Neither parent appeared at the final hearing and thus, we have no evidence before us of their plans for the child should she be returned to either one of them. Both parents lived outside the local area and neither parent maintained significant contact with S.S. Neither parent called regularly to check on the child and the caseworker agreed that there were periods in which months would go by with no contact from either parent. Furthermore, neither parent paid their court-ordered child support or medical support payments. As previously mentioned, neither Ashley nor Stephen completed all of the services required of them to secure return of S.S. to their care. In addition, all three

Department witnesses recommended that the trial court terminate the parents' rights on the basis that termination of those rights was in S.S.'s best interest.

The record contains significant evidence in favor of the trial court's finding that termination of Ashley's and Stephen's parental rights was in S.S.'s best interest. Accordingly, we conclude any evidence that the court could have considered supporting a finding that termination was not in S.S.'s best interest was not so significant as to make that contrary finding unreasonable. *See In re J.F.C.*, 96 S.W.3d at 266 (standard for factual insufficiency). Therefore, we find the evidence presented was legally and factually sufficient to support the trial court's finding that termination of Stephen's and Ashley's parental rights was in the best interest of the child. Resultantly, we resolve Ashley's sole issue against her and we overrule Stephen's first issue.

## CONCLUSION

Having resolved each of the parents' issues against them, we affirm the order of the trial court.

Patrick A. Pirtle
Justice