

# Fourth Court of Appeals
## San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-24-00255-CV

**IN THE INTEREST OF I.E.P. AND D.K.V.**, Children

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2022PA01552
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Irene Rios, Justice
Beth Watkins, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: August 14, 2024

AFFIRMED

Mother appeals the trial court's order terminating her parental rights to her children, I.E.P. (born 2021) and D.K.V. (born 2022).[1] Mother argues (1) the evidence is legally and factually insufficient to support the trial court's findings under Texas Family Code section 161.001(b)(1)(N), (O), (P), and (R); (2) the evidence is legally and factually insufficient to support the trial court's finding that termination is in the best interest of the children; and (3) the trial court abused its discretion in making its conservatorship determination. We affirm.

---

[1] To protect the privacy of the minor children, we use initials to refer to the children; we refer to their biological parents as Mother and Father. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

## BACKGROUND

On September 26, 2022, the Texas Department of Family and Protective Services (the "Department") filed its original petition to terminate Mother's parental rights to the children. As a condition of reunification, the Department created a family service plan requiring Mother to obtain appropriate housing; complete a domestic violence course; submit to a drug and alcohol assessment and follow recommendations; and submit to random drug testing. Because Mother was a minor,[2] the requirements of her plan were significantly less burdensome than typical service plans. The Department ultimately pursued termination of Mother's parental rights.

On February 20, 2024, the trial court held a one-day bench trial. The trial court heard testimony from one witness, the Department's caseworker, Laura Stevens. At the conclusion of trial, the court signed an order terminating Mother's parental rights pursuant to section 161.001(b)(1)(N), (O), (P), and (R) and found that termination of Mother's parental rights was in the best interest of the children. Mother appealed.

## ANALYSIS

On appeal, Mother challenges (1) the legal and factual sufficiency of the evidence supporting the trial court's findings under section 161.001(b)(1)(N), (O), (P), and (R); (2) the legal and factual sufficiency of the evidence on which the trial court relied to conclude that termination was in the best interest of the children; and (3) the trial court's conservatorship determination.

### *Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In*

---

[2] Mother was 15 when I.E.P. was born and 17 at the time of trial.

*re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department has the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate Mother's parental rights and that termination was in the best interest of the children. TEX. FAM. CODE § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally sufficient. *Id.* at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re A.F.*, No. 04-20-00216-CV, 2020 WL 6928390, at *2 (Tex. App.—San Antonio Nov. 25, 2020, no pet.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g.*, *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### *Statutory Termination Grounds*

#### *Applicable Law*

When, as here, the trial court terminates a parent's rights on multiple predicate grounds, we may affirm on any one ground. *In re A.V.*, 113 S.W.3d at 362; *In re D.J.H.*, 381 S.W.3d 606, 611–12 (Tex. App.—San Antonio 2012, no pet.). In general, assuming a best interest finding, only one predicate ground under section 161.001(b)(1) is sufficient to support a judgment of termination. *In re A.V.*, 113 S.W.3d at 362; *In re A.R.R.*, No. 04-18-00578-CV, 2018 WL 6517148, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied). To be successful on appeal, an appellant must challenge all the predicate grounds upon which a trial court based its termination order. *In re S.J.R.-Z.*, 537 S.W.3d at 682. When an appellant does not challenge all the grounds that may support an order of termination, we typically do not address the sufficiency of the

evidence of any of the predicate grounds for termination. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682. Instead, we must accept the validity of the unchallenged grounds and affirm the termination order. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682.

### *Application*

In her first issue, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's predicate findings under subsections (N), (O), (P), and (R). However, on appeal Mother does not brief the trial court's predicate finding under subsection (R). We must therefore accept the validity of the unchallenged ground under subsection (R) and affirm the termination order on that predicate ground. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682. We accordingly overrule Mother's first issue.

### **Best Interest**

### *Applicable Law*

There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[3] for courts to consider regarding a parent's willingness and ability to provide a child

---

[3] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates

with a safe environment, and the Texas Supreme Court has provided a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). This conduct can include drug use, which can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g.*, *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied). In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). Evidence that proves a statutory ground for termination is also probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

---

adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

*Application*

In her second issue, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's best interest finding. The essence of Mother's argument is that because she was a minor at the time of termination, it was difficult or impossible to complete her services and, therefore, she should have been given more time after she turned eighteen.

In making its best interest determination, the trial court could have considered that the children were born positive for drugs. Stevens testified both children tested positive at birth and further specified that D.K.V. tested positive for THC and amphetamines at birth; furthermore, Mother did not provide prescriptions that would have justified having these drugs in her system. The trial court could have believed Mother caused the children to be born addicted to controlled substances that were not legally obtained by prescription—a predicate ground for termination under subsection (R). *See* TEX. FAM. CODE § 161.001(b)(1)(R). The trial court could have weighed this subsection (R) evidence in favor of finding termination was in the best interest of the children. *See In re C.H.*, 89 S.W.3d at 28.

Moreover, "[a] parent's illegal drug use supports a finding that termination of the parent-child relationship is in the best interest of the child[ren]." *In re N.L.R.*, No. 04-23-01020-CV, 2024 WL 1184462, at *3 (Tex. App.—San Antonio March 20, 2024, no pet.). Stevens testified that Mother's home at the outset of the case contained drug paraphernalia. Although Mother's service plan required her to undergo a drug assessment and attend drug treatment, she did not complete the assessment required to undergo treatment. She also failed to submit to a single drug test during the seventeen-month pendency of the case. The trial court could have inferred from Mother's failure to submit to court ordered drug testing that she was using drugs. *See In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied) ("The trial court may infer from a refusal to take a drug test that appellant was using drugs."). Because drug use can destabilize the

home and expose children to physical and emotional harm if not resolved, its use is properly considered in determining termination is in the children's best interest. *See, e.g.*, *In re K.J.G.*, 2019 WL 3937278, at *8.

Mother likewise failed to complete the domestic violence course required by her service plan. From the outset of the case, the Department was concerned with domestic violence between Mother and Father. The Department referred Mother to a domestic violence course, which she failed to complete without providing Stevens any explanation. The trial court could have considered Mother's failure to comply with her service plan—including her failure to complete domestic violence classes—in determining termination was in the children's best interest. *In re S.J.S.*, No. 04-22-00249-CV, 2022 WL 14679411, at *7 (Tex. App.—San Antonio Oct. 26, 2022, pet. denied); *see also N.L.R.*, 2024 WL 1184462, at *4 ("In determining a child's best interest, the trial court is permitted to consider whether a parent complied with a service plan.").

The trial court also could have considered Mother's inability to provide a safe and stable home for the children. Early on, the Department conducted a home study on Mother's maternal aunt and uncle's home and approved Mother to live there with her children. However, Mother stopped residing with her aunt and uncle because of "family drama." Mother later told Stevens that she lived in Victoria, Texas, but refused to provide an address on multiple occasions. As a result, Stevens was not able to verify Mother's residence or visit it to ensure it was safe and stable for the children. *See N.L.R.*, 2024 WL 1184462, at *4 ("Evidence of a parent's unstable lifestyle also can support a factfinder's conclusion that termination of parental rights is in the child's best interest" because "[l]ack of stability, including a stable home, supports a finding that the parent is unable to provide for a child's emotional and physical needs.").

Finally, at the time of trial, the children—aged two and one—were too young to express their desires. However, the trial court could have considered that the children were bonded with

the foster family, are well-cared for by them, and have spent minimal time with their biological parents. *See In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied). Stevens testified the foster parents (who intend to adopt the children) have taken care of all the children's therapeutic medical needs, ensured their developmental needs have been met, and ensured the children have not only met but exceeded developmental milestones. *See id.* She further testified the children and foster parents are bonded. *See id.*

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Mother's parental rights was in the best interest of the children. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule Mother's arguments to the contrary.

### *Conservatorship*

In her third issue on appeal, Mother challenges the trial court's conservatorship determination on the basis that conservatorship should be reconsidered where a trial court's termination order is reversed on appeal. But because this argument requires Mother to prevail on one of her other two issues, and because we have overruled those issues, we overrule her final issue.

### CONCLUSION

Based on the foregoing, we affirm the trial court's order of termination.

Lori I. Valenzuela, Justice